UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00040-GNS-HBB

BOBBY SEVERE                                                              PLAINTIFF

v.

MIDDLE TENNESSEE TRUSS COMPANY, LLC                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion in Limine (DN 59), Defendant's Motion in Limine (DN 60), and Defendant's Motion for Partial Summary Judgment (DN 61). The motions are ripe for adjudication. For the reasons outlined below, the Plaintiff's Motion for Partial Summary Judgment is **GRANTED**, Plaintiff's Motion in Limine is **GRANTED**, and Defendant's Motion in Limine is **DENIED**.

### I.   STATEMENT OF FACTS AND CLAIMS

This action involves non-fatal injuries suffered by Plaintiff Bobby Severe ("Severe") when a truss he was installing in a barn on his property collapsed. (Compl. ¶¶ 5, DN 1-1). Severe had built several houses and other structures including barns and had installed several trusses in his lifetime. (B. Severe Dep. 10:13-14, 13:18-23, 24:7-10, July 19, 2017, DN 60-4).

On the day of his accident, Severe was attempting to set a truss purchased from Defendant Middle Tennessee Truss Company, LLC ("MTTC"). (M. Severe Dep. 12:22-24, Aug. 30, 2017, DN 64-2). When Severe stepped out on the truss to nail a "jig" to it, the truss collapsed "just like when you unzipped your britches." (Willis Dep. 12:19-13:4, 16:1-5, 17:1-4,

May 30, 2018, DN 64-5). Severe has no recollection of the events immediately preceding or following the accident. (B. Severe Dep. 40:7-41:21).

Severe filed this action in state court asserting claims of negligence and strict liability against MTTC. (Compl. ¶¶ 7-13, DN 1-1). Subsequently, MTTC removed the case to this Court. (Notice Removal, DN 1).

## II. JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00.

## III. DISCUSSION

### A. Motions in Limine

The parties have filed competing motions in limine relating to the respective opposing expert witnesses. Under Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The admissibility of scientific evidence is governed by Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

### 1. *Plaintiff's Motion to Exclude Expert Testimony (DN 59)*

Severe moves to exclude the expert testimony of Terence A. Weigel ("Weigel"), a forensic engineer with Donan Engineering Co., Inc. (Pl.'s Mem. Supp. Mot. Lim. 1, DN 59-1; Weigel Report 4, DN 59-3). MTTC retained Weigel to perform an investigation related to the failure of a metal-plate-connected wood truss. (Weigel Report 5). In preparing his report, Weigel reviewed documents, inspected the failed truss, conducted a structural analysis of the truss, tested an exemplar truss, and reviewed the BCSI Guide.[1] (Weigel Report 12).

Severe seeks to exclude any evidence relating to Weigel's experimental recreation of Severe's accident, claiming the conditions of the experiment were not "substantially similar" to the actual occurrence. (Pl.'s Mem. Supp. Mot. Lim. 4-9). Severe has provided the Court with a video of the experiment. (Pl.'s Mot. Lim. Ex. 5, DN 59-6).

As the Supreme Court has noted, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 595 (1993) (internal quotation marks omitted) (citation omitted). "[T]he party seeking to introduce evidence reconstructing an accident must show a substantial similarity in circumstances between the reconstruction and the original accident." *Jackson v. E-Z-Go Div. of Textron, Inc*. 326 F. Supp. 3d 375, 405 (W.D. Ky. 2018) (internal quotation marks omitted) (quoting *Bado-Santana v. Ford Motor Co.*, 482 F. Supp. 2d 197, 201 (D.P.R. 2007)). "The

---

[1] This guide is a publication produced by the Structural Building Components Association. *See* Structural Bldg. Components Ass'n, Building Component Safety Information Guide to Good Practice for Handling, Installing, Restraining & Bracing of Metal Plate Connected Wood Trusses, http://www.sbcindustry.com/building-component-safety-information-bcsi (last visited Aug. 13, 2019).

closer the experimental evidence simulates actual events rather than demonstrates a scientific principle, the higher the foundational standard: the experiment and event must be sufficiently similar to provide a fair comparison." *Id*. (internal quotation marks omitted) (quoting *Dortch v. Fowler*, No. 305-CV-216-JMD, 2007 WL 1794940, at *1 (W.D. Ky. June 15, 2007)). The proponent of expert testimony must demonstrate its admissibility by a preponderance of the evidence. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008). "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (internal quotation marks omitted) (quoting *U.S. v. Abel*, 469 U.S. 45, 54 (1984)). "Assessing the probative value of the [proffered evidence] . . . , and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment . . . ." *Abel*, 469 U.S. at 54

Courts in the Sixth Circuit have looked to the First Circuit case of *Fusco v. General Motors Corp.*, 11 F.3d 259 (1st Cir. 1993), for guidance in applying the "substantial similarity" standard to factual circumstances like this case. *See Dortch*, 2007 WL 1794940, at *3. In *Fusco*, the defendant, General Motors, conducted an experiment attempting to demonstrate a Chevette's reaction upon the occurrence of a certain malfunction the plaintiff alleged caused their car to swerve off the road. *Fusco*, 11 F.3d at 262. The court held that General Motors did not meet its burden of showing substantial similarity between the experiment and the actual occurrence, because the test occurred in controlled conditions, on a test track with a driver expecting the malfunction, and with a doctored piece of equipment rather than one that actually broke. *Id*. at 264. The First Circuit reasoned that "[w]here [a] recreation could easily seem to resemble the actual occurrence . . . jurors may be misled because they do not fully appreciate how variations

in the surrounding conditions, as between the original occurrence and the staged event, can alter the outcome." *Id*. at 263-64.

Like General Motors in *Fusco*, MTTC has failed to meet its burden of showing substantial similarities between Weigel's experimental conditions and the conditions surrounding Severe's accident. Instead, MTTC merely states that Weigel used the same materials for the experiment as were used during the installation of the allegedly defective truss. (Def.'s Resp. Pl.'s Mot Lim. 4). MTTC does not rebut Severe's contentions concerning the alleged physical differences between the reconstruction and actual occurrence, including: five additional braces connected the two trusses upon reconstruction; a different brace connected the upright center post of one truss to the other; the experiment was conducted at ground level instead of 20 feet above ground; weight was applied incrementally rather than abruptly as in the actual incident; and a cut was made by a saw blade as opposed to a break. (Pl.'s Mem. Supp. Mot. Lim. 5-6). Moreover, Weigel's experiment, like the experiment conducted by General Motors in *Fusco*, was conducted in controlled conditions with the expectation of the occurrence and a "doctored" experimental truss rather than the one that actually broke. Such variation in the conditions surrounding Severe's accident and the staged breaking of the experimental truss could mislead jurors who may not fully appreciate how certain variations may have altered the outcome.

MTTC's naked assertion that Weigel used the same materials as the failed truss is simply contrary to the facts outlined above. *See Buck v. Ford Motor Co.*, 810 F. Supp. 2d 815, 847 (N.D. Ohio 2011) ("The Sixth Circuit has concluded that 'substantial similarity' exists in incidents involving the same model, the same design, the same defect, and occurring under similar circumstances." (citation omitted)). As a result, MTTC has failed to demonstrate, by a preponderance of the evidence, substantial similarities between the experimental and actual

conditions. The Court will grant Severe's motion to the extent it seeks to prohibit admission of evidence related to Weigel's experiment. Weigel will not be prohibited, however, from expressing opinions regarding his theory that the failed trusses moved laterally. To the extent lateral movement was prevented by other supports, such other evidence affects the weight—not the sufficiency—of Weigel's opinions. *See Aetna, Inc. v. Express Scripts, Inc.*, 261 F.R.D. 72, 82 (E.D. Pa. 2009) ("[T]o the extent that there are facts in dispute which [the expert] should or should not have relied upon . . . , a jury will be given the opportunity to sort through these facts . . . ."); *see also E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1050 (E.D. Tenn. 2015) ("That the opposing party believes that different data should have been used, additional factors considered, or alternate conclusions reached does not render contrary expert opinions irrelevant and unreliable. Instead, it reinforces the importance of allowing both parties to present expert testimony, of allowing each party an opportunity to vigorously cross-examine the expert testimony offered by its opponent, and of allowing the finder of fact to weigh the credibility and opinions of both experts.").

### 2. *Defendant's Motion in Limine (DN 60)*

MTTC moves in limine to exclude the testimony of Severe's expert witness, Darcy S. Stewart ("Stewart"), who is President and Senior Design Engineer for Crawford & Crawford & Stewart Engineers, Inc. (Def.'s Mot. Lim. 6-9, DN 60; Def.'s Mot. Lim. Ex. 3, DN 60-3). Stewart has provided a "Wood Truss Failure Report" based on a visual inspection of the truss failure, general building design, site conditions, construction methods, and a review and report of the truss failure. (Stewart Report 1, DN 60-1). In seeking to exclude Stewart's testimony, MTTC contends that he is unqualified to testify as an expert and that his testimony is unreliable. (Def.'s Mot. Lim. 6-9).

"[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "The subject of an expert's testimony must be 'scientific . . . knowledge.'" *Id.* at 589-90. As used in Fed. R. Evid. 702, "[t]he adjective 'scientific' implies a grounding in the methods and procedures of science." *Id.* at 590. "Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id.* "It would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Id.* at 590. "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Id.* at 592 (internal citation omitted) (citations omitted). "Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id.* An expert's opinion must satisfy three requirements to be admissible. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008). "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *Id.* at 529 (internal citations omitted) (citing Fed. R. Evid. 702).

MTTC challenges Stewart's qualifications and the reliability of his testimony but does not contest the relevance of his testimony. The Court will separately address these challenges to Stewart's testimony.

      **a.    Qualifications**

MTTC's first argument for excluding Stewart's testimony is that he is not qualified because he does not have the proper knowledge, skill, experience, training, or education to testify

concerning the manufacturing process or truss failure causation. MTTC bases this contention in that: (1) Stewart did not work with trusses as his primary occupation from 1978-1992; (2) he does not have the word truss in his resume; and (3) he relied on his inquiries with truss manufacturers to form his opinions. (Def.'s Mot. Lim. 6-7).

First, neither Stewart's employment by General Motors nor the absence of the word "truss" in his resume demonstrates that he is unqualified to testify as an expert. MTTC disregards Stewart's credentials, including: degrees in physics and mathematics from Duke University; experience as a framing carpenter; certification as a professional engineer; his involvement in the construction of numerous truss bay type buildings; his design of between 50 and 75 buildings; and his prior experience as an expert in other court cases relating to engineering and design. (Stewart Dep. 12:8-21:11, June 13, 2018, DN 64-6). Stewart's full range of practical experience as well as academic and technical training are sufficient to qualify him to render expert testimony regarding issues in this case. *See Moore v. Lowe's Cos.*, No. 1:13-CV-00005-GNS-HBB, 2016 WL 1181741, at *3 (W.D. Ky. Mar. 25, 2016) (considering expert's engineering degree, registration as a professional engineer, practice as a professional engineer in various fields, practical experience in carpentry, and prior experience as an expert witness as factors in approving his qualifications to testify as an expert).

Second, MTTC's assertion that Stewart lacks the necessary credentials to be an expert because he relied on information gathered from truss manufacturers to form his opinions is without merit. Expert witnesses are given wide latitude in forming their opinions and may rely on second-hand knowledge. *See Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." (internal citation omitted) (citations omitted)). MTTC has failed to

show reason to believe Stewart's testimony will not have a reliable basis in the knowledge and experience of his discipline. Conversely, Stewart's education, experience, and other credentials indicate that his testimony has a reliable basis. Therefore, Stewart's consultation with truss manufacturers does not render him unqualified as an expert.

        b.      **Reliability**

MTTC also argues that Stewart's opinions and methodology are unreliable. MTTC grounds this argument on two assertions: (1) Stewart based his opinion on Severe's testimony and Severe does not remember the events and (2) Stewart is unable to state exactly how the truss failed.

First, Stewart did not solely base his opinion on Severe's testimony. Stewart personally inspected the barn, the trusses that were not used, and the broken truss (Stewart Report 2, DN 64-7); he obtained and reviewed the design documents related to the truss, and consulted with several truss manufacturers (Stewart Report 2); he contacted lumber inspectors (Stewart Dep. 44); he conducted independent research on the standards for grades of lumber to be used in truss manufacturing (Stewart Report 3); and he tested one of the pieces of the actual truss at issue against Kentucky Building Code and industry standards. (Stewart Dep. 33).

It is clear from Stewart's Report and deposition transcript that he did not rely solely on Severe's testimony in forming his opinions. Regardless, as the Sixth Circuit has noted: "mere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *McLean v. 988011 Ont., Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) (citation omitted). Therefore, MTTC's argument that "Stewart should be prevented from testifying concerning the procedures because his narrative of events is in direct conflict with the testimony of both Bobby Severe and Michael Severe" is addressed to the weight

of the evidence but not its admissibility. *See Greenwell v. Boatright*, 184 F. 3d 492, 497 (6th Cir. 1999) (holding that contradiction between the expert and the eyewitness did not render the testimony inadmissible).

Second, Stewart does not have to state exactly how the truss failed for his testimony to be reliable, because it would be unreasonable to require his testimony to be "known to a certainty." *Daubert*, 509 U.S. at 590. In his deposition, Stewart stated that "[t]ypical truss failure involves some structural member losing its rigidity or its resistance to motion. The truss underloads then bends or deflects to relieve that tension or compression. And the bending causes the truss to lose most of its strength and it collapses very suddenly." (Stewart Dep. 53:19-25). MTTC claims Stewart's testimony is unreliable, however, because Stewart refuses to rule out the possibility that the truss broke when hitting the ground. (Def.'s Mot. Lim. 9).

The focus must solely be on principles and methodology, not on the conclusions they generate. *See Jahn v. Equine Servs., PSC*, 233 F.3d 383, 388 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 594-95). Stewart's refusal to conclude with certainty what caused the break in the truss does not render his testimony unreliable. What matters is his methodology, which he explains thoroughly throughout his report and deposition. (Stewart Report 7-9; Stewart Dep. 36:4-57:5). Moreover, "[s]cientific knowledge establishes the standard of evidentiary reliability and to be considered appropriately scientific, the expert must only state . . . 'an inference or assertion . . . derived by the scientific method.'" *Jahn*, 233 F.3d at 388 (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 113). Stewart's inference regarding how the truss failed is appropriately scientific to render his opinion reliable because he derived it from scientific testing, research, and consultation.

For these reasons, Stewart satisfies the qualification requirements of Fed. R. Evid. 702, and his opinions are reliable. Accordingly, the Court will deny this motion.

B. **Defendant's Motion for Partial Summary Judgment (DN 61)**

Finally, MTTC moves for partial summary judgment on the basis that Severe is not entitled to recover punitive damages for his claim. (Def.'s Mot. Partial Summ. J. 1, DN 61). It argues that there is a lack of any evidence that MTTC was grossly negligent. (Def.'s Mot. Partial Summ. J. 1).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

"[Punitive] damages are given to the plaintiff over and above the full compensation for his injuries, for the purpose of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 337-38 (Ky. App. 2014) (internal quotation marks omitted) (quoting *Hensley v. Paul Miller Ford*, 508 S.W.2d 759, 762 (Ky. 1974)). "In order to justify punitive damages, there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety, or property of others." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985). "Even where a single act of negligence might not constitute gross negligence, gross negligence may result from the several acts." *Id*. at 388. "[A] finding of gross negligence and award of punitive damages may be based, at least in part, upon evidence regarding the policies and procedures of the company." *MV Transp., Inc.*, 433 S.W.3d at 338 (citation omitted). "The threshold for the award of punitive damages is whether the misconduct was 'outrageous' in character, not whether the injury was intentionally or negligently inflicted." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 267 (Ky. App. 2008) (citation omitted). Reckless disregard for the rights of others may be implied from the nature of the misconduct. *Id*.

In *Sufix, U.S.A., Inc. v. Cook*, 128 S.W.3d 838 (Ky. App. 2004), the defendant was ordered to pay the plaintiff nearly $3 million in punitive damages because of injuries the plaintiff sustained when a weed trimmer manufactured by the defendant malfunctioned. *Id.* at 840. The

court held that punitive damages were appropriate because—among other reasons—evidence reasonably indicated that the defendant did not test as it should have, that its failure to do so was wanton or reckless, and that testing would have revealed the unreasonably dangerous nature of the product before the plaintiff's injury. *Id*. at 842. The court was also presented with "evidence that [defendant] produced a stronger metal-capped version for distribution in Italy, where the plastic version was rejected." *Id*. at 841. The court found that this "should have put [defendant] on notice that the plastic version was unsound." *Id*. Moreover, there was proof that defendant "received notice from customers of product failures but inadequately investigated those complaints." *Id*.

Like the plaintiff in *Sufix*, Severe alleges that MTTC was grossly negligent in its failure adequately to inspect its products before distributing them. A critical difference in Severe's claim for punitive damages, however, is the lack of evidence showing that MTTC had prior notice of the dangers posed by its products or inspection process. It is the flagrant indifference to the safety of others that justifies an award of punitive damages. *See Bowling Green Mun. Utils. v. Atmos Energy Corp.*, 989 S.W.2d 577, 581 (Ky. 1999). Severe only provides deposition testimony from Chad Long ("Long"), one of MTTC's owners, to oppose the motion for summary judgment, and nowhere in Long's deposition is there any mention of prior truss failures. (Long Dep., July 18, 2017, DN 65-1). Severe does not point to any evidence of MTTC's wanton or reckless disregard for the lives and safety of others. *See Scanlan v. Sunbeam Prods., Inc.*, No. 3:12-CV-00009-CRS, 2018 WL 2392549, at *4 (W.D. Ky. May 25, 2018) (holding that the lack of testing conducted on space heater, which led to the death of an infant, did not amount to gross negligence absent evidence showing the defendant was on notice that the product posed a risk of personal injury or death).

13

Moreover, to support an award of punitive damages Kentucky law requires a finding of a failure to exercise even slight care. *See Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51-52 (Ky. 2003). In his deposition, Long stated with respect to checking for defective lumber: "[y]ou know because of a knot. It just won't look right. You can look at it and tell, that just ain't going to work." (Long Dep. 55:20-22). He also explained that employees receive on-the-job training to visually inspect lumber used in constructing the trusses. (Long Dep. 50:9-55:11). While a jury could find such conduct negligent, MTTC's process for inspecting the lumber used in its products evidences at least slight care in the manufacture of the allegedly defective product.

Therefore, Severe has failed to produce evidence of MTTC's gross negligence under Kentucky law because there is no proof that MTTC did not exercise at least slight care in its inspection of its products. Accordingly, the Court will grant MTTC's motion for partial summary judgment.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion in Limine (DN 59) is **GRANTED**.

2. Defendant's Motion in Limine (DN 60) is **DENIED**.

3. Defendant's Motion for Partial Summary Judgment (DN 61) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

August 28, 2019

cc: counsel of record